IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES D. DOMITROVICH,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 2:08cv1094 |
| ) | Electronic Filing |
| **BOROUGH OF MONACA** and ) | |
| **RONALD L. HOGUE, JR., individually** ) | |
| **and officially,** ) | |
| ) | |
| Defendants. ) | |

## OPINON

Plaintiff James D. Domitrovich ("Plaintiff" or "Domitrovich") commenced this civil rights action seeking redress for alleged violations of his constitutional rights in conjunction with an arrest and the criminal proceeding that followed. Presenting before the court are Defendant Ronald L. Hogue, Jr.'s ("Hogue") motion for summary judgment and the Borough of Monaca's ("Monaca") second motion to dismiss. For the reasons set forth below, Hogue's motion will be granted in part and denied in part and Monaca's motion will be granted.

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's claim, and upon which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. When the movant does not bear the burden of proof on the claim, the movant's initial burden may be met by demonstrating the lack of record evidence to support the opponent's claim. National State Bank v. National Reserve Bank, 979 F.2d 1579, 1582 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial," or the factual record will be taken as presented by the moving

party and judgment will be entered as a matter of law.  Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574 (1986) (quoting Fed.R.Civ.P. 56 (a), (e)) (emphasis in Matsushita).  An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

In meeting its burden of proof, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586.  The non-moving party "must present affirmative evidence in order to defeat a properly supported motion" and cannot "simply reassert factually unsupported allegations."  Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).  Nor can the opponent "merely rely upon conclusory allegations in [its] pleadings or in memoranda and briefs."  Harter v. GAF Corp., 967 F.2d 846 (3d Cir. 1992).  Likewise, mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion.  Robertson v. Allied Signal, Inc., 914 F.2d 360, 382-83 n.12 (3d Cir. 1990).  If the non-moving party's evidence merely is colorable or lacks sufficient probative force summary judgment must be granted.  Anderson, 477 U.S. at 249-50; see also Big Apple BMW, Inc. v. BMW of North America, 974 F.2d 1358, 1362 (3d Cir. 1992), cert. denied, 113 S.Ct. 1262 (1993) (although the court is not permitted to weigh facts or competing inferences, it is no longer required to "turn a blind eye" to the weight of the evidence).

**I. Facts**

The record as read in the light most favorable to plaintiff establishes the background set forth below.  Hogue has been employed as a patrolman with Monaca since 2001.  On the evening of June 6, 2007, Hogue and fellow Officer Donald Couch ("Couch") were asked to investigate a complaint from the Croatian Club involving guests at a nearby residence.

Upon arrival, the officers found people at the residence having a cookout and consuming alcohol.  Plaintiff, James D. Domitrovich ("Domitrovich"), was attending the cookout and witnessed the owner of the residence, Denny Summerville, inform the officers that the guests were not bothering anyone.  After finding no on going disturbance the officers started to leave the Summerville residence.  Danny Hall, an intoxicated guest, then made several rude remarks

2

towards Hogue and Couch. The officers left the residence but decided to maintain observation from a distance.

From this point forward, Domitrovich and Hogue have two very different accounts of what transpired. Hogue contends that he and Couch heard a motor revving and then observed an orange Camaro leaving the property at a high rate of speed and hitting a garbage can. Hogue and Couch pursued the Camaro in separate cars in order to issue a traffic citation. Hogue's pursuit of the Camaro continued until it pulled up in front of a residence on Pacific Avenue, at which time Domitrovich exited the vehicle and headed towards his home. Hogue exited his vehicle and instructed Domitrovich to get back into his car multiple times but Domitrovich did not comply and kept walking towards the home.

After Domitrovich's refusal to acknowledge Hogue's comments, Hogue approached Domitrovich and told him to "[p]ut your hands behind your back." Domitrovich kept walking towards the home. Hogue grabbed Domitrovich by his right wrist and Domitrovich turned around to face him. Hogue told Domitrovich he was under arrest for suspicion of driving under the influence. Domitrovich responded: "I'm not taking no (expletive) test." Hogue again told Domitrovich to put his hands behind his back and Domitrovich kept asking why he was being arrested. Domitrovich kept moving his arm away from Hogue so he could not handcuff him. Domitrovich eventually broke free of Hogue's grasp and began to walk towards the home. Hogue again grabbed Domitrovich in an attempt to place him under arrest and Domitrovich punched Hogue in the face. Hogue grabbed his telescopic baton and instructed Domitrovich to get to the ground. Domitrovich failed to comply. Hogue struck Domitrovich with his baton five to eight times. After these strikes proved ineffective in bringing Domitrovich to the ground, Hogue began to wrestle him to the ground and Domitrovich "began to fight back." Domitrovich was laying on his stomach and Hogue was on top of him. Hogue told Domitrovich again to put his hands behind his back and Domitrovich replied: "[g]et your F-ing knee out of my F-ing head."

By this time Couch arrived and detained Domitrovich's girlfriend, Cynthia McPherson, who had exited the house. Couch went over to help Hogue who was still trying to effectuate the

3

arrest. Both Couch and Hogue gave multiple commands to Domitrovich to quit resisting and take his hands out from underneath his chest. Domitrovich did not respond. Hogue became concerned about his own safety because Domitrovich's hands were out of sight and Hogue did not know whether Domitrovich had a weapon. At this time Hogue punched Domitrovich twice in the ribs in an attempt to get Domitrovich to release his hands. When this did not work, Hogue informed Domitrovich that if he did not bring his hands out from underneath his chest, he would be pepper sprayed. Domitrovich did not comply. Hogue pepper sprayed him. Domitrovich released his hands and Hogue handcuffed him.

Domitrovich was placed in the back of a police car, where he kicked out the rear side window and damaged the door frame. Domitrovich was then transported to the Borough police station and processed.

Domitrovich contends he did not "tear out" of the Summerville residence at a high rate of speed or hit any garbage cans. He never noticed Hogue in pursuit of him and by the time Hogue appeared, he was already on his property so Hogue could not have seen him exit his vehicle. Hogue did not instruct him to return to his vehicle. He did not ignore Hogue's requests. Instead, he followed all of Hogue's instructions and did not refuse alcohol testing, as he wanted to take a blood test.

Domitrovich contends that he had parked his vehicle and began to traverse toward his residence when Hogue yelled "your under arrest for suspicion of DUI," to which Domitrovich responded, "I"ll take a blood alcohol test." Hogue, angered by Domitrovich's suggestion to go take an alcohol test, told Domitrovich to put his hands behind his back, and Domitrovich immediately complied. Hogue then grabbed both of Domitrovich's hands, led him to the police car and slammed his head off the trunk. Hogue then punched Domitrovich in the temple with a closed fist and yelled "quit resisting." Domitrovich responded, "I'm not resisting" and Hogue kicked out his left leg and began to assault Domitrovich with a baton. Afer this assault, Hogue cuffed Domitrovich and put him into the back of the police car.

Hogue called to have Domitrovich's vehicle towed. Domitrovich said "let someone move it" from inside the patrol car. Hogue opened the door and pepper sprayed Domitrovich and

4

struck him several times. Domitrovich, stunned and in pain, kicked back at Hogue who closed the car door and as a result the rear window was smashed out.

Domitrovich further contends he was transported to the Borough of Monaca police station where Hogue forcefully removed him from the police car and threw him to the ground, causing lacerations to both his knees. Once inside the station, Hogue slammed Domitrovich's head off the counter and punched him in the head three times with a closed fist.

The next day Hogue prepared and filed a criminal complaint and affidavit of probable cause in the Court of Common Pleas of Beaver County charging Domitrovich with the crimes of aggravated assault, disorderly conduct, criminal mischief - tampering with property, resisting arrest, driving under the influence ("DUI"), and public drunkeness. On July 10, 2007, Domitrovich entered into an agreement to plead *nolo contendere* to resisting arrest and a reduced charge of simple assault in exchange for the Commonwealth's agreement to *nolle pros* the remaining charges.

On December 14, 2007, Domitrovich appeared for an oral plea colloquy before the Honorable Richard Mancini of the Court of Common Pleas of Beaver County. At the colloquy Judge Mancini explained that by pleading *nolo contendere* to simple assault and resisting arrest, Domitrovich was admitting the facts as presented by the Commonwealth. Domitrovich stated that he understood the ramifications of his plea. The assistant district attorney then read into the record those facts that the Commonwealth would have sought to prove at trial. The proffer indicated Domitrovich "began to physically assault [Hogue] by striking him with a closed fist about the face and torso areas and that Officer Hogue did in fact use chemical spray in attempting to place [Domitrovich] under control as well as impact weapons and that those facts are sufficient to support the charges of resisting arrest and simple assault." Following the reading of the facts into the record, Domitrovich entered a plea of *nolo contendere*. He was sentenced to two years probation, drug and alcohol evaluation and treatment, and make restitution in the amount of $500.00 to cover the Borough's insurance deductible.

On August 5, 2008, Domitrovich brought suit against Hogue and Monaca alleging §1983 civil rights violations arising out of his arrest on June 6, 2007, and Hogue's proposed testimony

5

and use of a refusal-to-consent-to-testing form at his initial hearing. Domitrovich's claims against Officer Hogue include the use of excessive force, false arrest, and malicious prosecution. He brings a due process claim against Monaca.

## II. Discussion

**Claims Against Officer Hogue**

Hogue moves for summary judgement on the basis that Domitrovich's claims are barred by the doctrines of Heck v. Humphrey, 512 U.S. 477 (1994) and collateral estoppel. Domitrovich responds by asserting he is not collaterally estopped from pursuing his claims because a plea of *nolo contendre* is treated differently than a guilty plea. Furthermore, Nelson v. Jashurek, 109 F.3d 142 (3d Cir. 1997), – where the court recognized the principle that merely because an officer was justified in using force to effectuate an arrest does not foreclose a claim that excessive force was used – is controlling and thus Heck does not bar his claims.

Domitrovich is barred from pursuing his claims for false arrest and malicious prosecution by the doctrine of collateral estoppel. Under the doctrine of collateral estoppel, once an issue of fact or law necessary to a judgement has been determined, that decision precludes relitigation of the same issue on a different cause of action between the same parties. Walker v. Horn, 385 F.3d 321, 336-337 (3d Cir. 2004). Furthermore, once a case has been adjudicated in a state court, federal courts are required by 28 U.S.C. § 1738 to give full faith and credit to the state judgement and apply the same preclusion rules as the courts of that state. Edmundson v. Borough of Kennett Square, 4 F.3d 186, 189 (3d Cir. 1993).

Moreover, a plaintiff is collaterally estopped from denying the facts of which he or she was accused and which formed the factual basis for the entry of a prior guilty plea. Cole v. Mistick, No. 05-1476, 2009 WL 1160962, *9 (W.D. Pa. April 28, 2009); M.B. ex rel. T.B. v. City of Philadelphia, 128 Fed. Appx. 217, 226 (3d Cir.2005) ("Furthermore, in Pennsylvania, 'criminal convictions are admissible in civil actions arising from the same operative facts and circumstances [and] these convictions are conclusive evidence of the criminal acts.' ") (quoting Stidham v. Millvale Sportsmen's Club, 618 A.2d 945, 952 (Pa. Super.1993)); Harsh v. Petroll, 840 A.2d 404, 444 (Pa. Commw. 2003) ("Prior criminal convictions are conclusive evidence

6

subsequent civil actions arising out of the same incidents and concerning the same activity which was criminally prosecuted in the prior action."), appeal granted in part by, 862 A.2d 581 (Pa. 2004), and aff'd, 887 A.2d 209 (Pa. 2005); 8 STANDARD PENNSYLVANIA PRACTICE 2d § 49:21 ("under Pennsylvania law, evidence of a guilty plea by an alleged perpetrator of sexual abuse against a child in foster care was admissible and entitled to preclusive effect on the issue of whether the acts to which he admitted in his plea were committed, in an action by the child seeking damages against a foster parent, the perpetrator, and a social services agency and its employees") (emphasis added). Additionally, "it has long been consistently held in Pennsylvania that in terms of its effect on a case, a plea of *nolo contendre* is treated the same as a guilty plea." Kist v. Fatula, 2007 WL 2404721, *7 & n.6 (W.D. Pa. August 17, 2007) (collecting cases in support).

Domitrovich cannot maintain his claims of false arrest and malicious prosecution because the doctrine of collateral estoppel forecloses his ability to raise an issue of material fact and compels the entry of judgment in Hogue's favor. At the oral plea colloquy, Domitrovich did not challenge the evidence the Commonwealth proffered to prove he assaulted Hogue by striking him with a closed fist. Moreover, Domitrovich pled *nolo contendere* to simple assault and resisting arrest. He cannot now assert a claim for false arrest under the Fourth Amendment based on the lack of probable cause because he is collaterally estopped from asserting facts which contradict the factual basis of his plea.

The elements of false arrest include: 1) an arrest made without probable cause or 2) one made by someone without privilege to arrest. Brockington v. City of Philadelphia, 354 F. Supp.2d 563, 572 (E.D. Pa. 2005). Further, "probable cause is conclusively established to exist at the time the arrest was made when there is a guilty plea or conviction." McGriff v. Vidovich, 699 A.2d 797, 800 (Pa. Commw. 1997); see also Shilling v. Brush, No. 05-871, 2007 WL 210802, *9 (M.D. Pa. January 22, 2007) ("Probable cause is established by a guilty plea."). Additionally, "a criminal defendant who offers a plea of *nolo contendere* to a given charge stands in the same shoes as one who has been convicted of the charged offense." Moser v. Bascelli, 879 F. Supp. 489, 493 (E.D. Pa.1995). Finding probable cause on one charge forecloses liability

7

against an arresting officer for false arrest on all charges. Johnson v. Knorr, 477 F.3d 75, 85 (3d Cir. 2007). In other words, "in analyzing false arrest claims, a court to insulate a defendant from liability need only find that 'probable cause ... exist[ed] as to any offense that could be charged under the circumstances.'" Id. at 85 (quoting Barna v. City of Perth Amboy, 42 F.3d 809 (3d Cir. 1994).

The very fact that Plaintiff admitted to striking an officer in pleading *nolo contendere* to simple assault shows there was probable cause for an arrest, which is all that is required. Plaintiff is estopped from contending otherwise.

Similarly, Plaintiff cannot maintain a claim for malicious prosecution because he admitted to facts that establish the elements of simple assault and resisting arrest. His plea thus establishes there were grounds to prosecute on these two charges, and none of the other charges were pursued. Plaintiff is estopped from challenging the facts essential to the plea he entered. Had he wished to do so all he needed to do was challenge the Commonwealth's evidence at trial through is own testimony. He chose to forgo that course of action and reap the benefit of the deal he struck with the prosecution. He is barred from disputing the essential facts which formed the basis of his plea, which in turn foreclose a claim for malicious prosecution.

Plaintiff's contention that the doctrine of collateral estoppel does not apply because he entered a plea of *nolo contendre* as opposed to a guilty plea is unavailing. While Federal Rule of Evidence 410 provides that "a plea of *nolo contendere*" is not "in any civil or criminal proceeding, admissible against the defendant who made the plea," it does not follow that the defendant who entered the plea can disregard it and pursue liability against the state actors without restraint.

In Walker v. Schaeffer, 854 F.2d 138, 142-43 (6th Cir. 1988), the court recognized "a material difference between using [a] *nolo contendere* plea to subject a former criminal defendant to subsequent civil or criminal liability and using the plea as a defense against those submitting a plea interpreted to be an admission which would preclude liability." Id. at 143. Consequently, the court refused "to interpret the rule so as to allow the former defendants to use the plea offensively, in order to obtain damages, after having admitted facts which would indicate

no civil liability on the part of the arresting police." Id.

The same principles apply here. Plaintiff entered a plea of *nolo contendere* pursuant to a factual basis that established there was probable cause for an arrest and a basis for prosecution. Plaintiff is estopped from now asserting that no factual basis existed for his arrest and convictions.

Moreover, Plaintiff is barred from recovering on his false arrest and/or malicious prosecution claims by the Heck doctrine. In Heck, the Supreme Court held:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

Id. at 487. In accordance with these principles the Third Circuit has observed that "if a section 1983 plaintiff seeks to recover for an unconstitutional conviction, imprisonment, or other harm caused by actions whose unlawfulness would render the conviction or sentence unlawful, the plaintiff must prove that the conviction or sentence has been reverse, expunged, or declared invalid." Torres v. McLaughlin, 163 F.3d 169, 173 (3d Cir. 1998). Thus, a § 1983 plaintiff is barred from recovery whenever the claims would "necessarily implicate the conviction." Id. at 173.[1]

Plaintiff filed his § 1983 claims following his plea of *nolo contendre* to simple assault

---

[1]The accrual of a cause of action is affected by the Heck bar only where a criminal conviction exists at the time the cause of action would otherwise accrue and the successful pursuit of the claim would impugn the validity of that conviction. Consequently, a claim for false arrest accrues when the plaintiff is released from police custody and becomes detained pursuant to legal process. Dique v. New Jersey State Police, 603 F.3d 181, 187 (3d Cir. 2010) (citing Wallace v. Kato, 549 U.S. 384, 393 (2007)). Heck may still present an obstacle to overcome before a plaintiff can proceed on any timely filed claim for false arrest, but a potential conviction or adverse ruling does not toll the running of the statute. Wallace, 549 U.S. at 394-95. "If a plaintiff files a [§ 1983 suit] before he has been convicted (or files any claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or likelihood of a criminal case is ended." Wallace, 549 U.S. 384, 393-94.

and resisting arrest and the convictions that followed. Succeeding on claims of false arrest and malicious prosecution would "necessarily implicate" the validity of the existing convictions. By pleading no contest to the two charges, Plaintiff essentially conceded that there was ample evidence to arrest and prosecute. As the Supreme Court has reasoned, to permit a plaintiff's claim to proceed under such circumstances would result in "a collateral attack on the conviction through the vehicle of a civil suit," an approach that repeatedly has been rejected. Heck, 512 U.S. at 485-86. Because Plaintiff cannot establish that his convictions for simple assault and resisting arrest has been reversed, expunged, or declared invalid, he is barred from pursuing his claims for false arrest and malicious prosecution.

In contrast, Plaintiff's excessive force claim is not barred by Heck or the doctrines of collateral or judicial estoppel. Hogue forcefully asserts that "Domitrovich's current claims . . . are premised on facts which directly contradict the admissions he made when he entered his *nolo contendere* plea [and] the interests of justice require that Domitrovich be prohibited from presenting a version of facts . . . inconsistent with the judicial admissions he made in his state criminal proceeding and from which he received a benefit." Defendant Hogue's Reply Brief (Doc. No. 47) at 6. In other words, Hogue invokes the principles of judicial estoppel in addition to the grounds discussed above. But Plaintiff's excessive force claims is beyond the reach of all of these.

First, the Heck doctrine does not bar Plaintiff's excessive force claim. Plaintiff aptly notes that it is settled in this jurisdiction that a § 1983 plaintiff's prior plea of *nolo contendre* to resisting arrest does not necessarily bar a subsequent excessive force claim because "the fact that [the police officer] was justified in using 'substantial force' to arrest [the plaintiff] does not mean that he was justified in using an excessive amount of force and thus does not mean that his actions in effectuating the arrest necessarily were objectively reasonable." Nelson v. Jashurek,109 F.3d 142, 145 (3d Cir. 1997). Hogue contends that Nelson is distinguishable because there the plaintiff only was charged with resisting arrest and the present situation is more analogous to Garrison v. Porch, 2008 WL 1744730 (D.N.J. 2008), where the court considered the impact of Nelson when a conviction for simple assault has been added to the mix.

10

In Garrison, the plaintiff brought claims for excessive force and unreasonable search and seizure after he pled guilty to charges of resisting arrest and simple assault. The district court opined that Nelson's holding was not controlling where the plaintiff has been convicted of simple assault in addition to resisting arrest. Id. at *17. It reasoned that because the plaintiff had pled guilty to simple assault on the police officer and did not assert that he was acting in self-defense, the plaintiff impliedly conceded that the officer's force was not excessive, unnecessary or unlawful. Id. at *18.[2] Furthermore, the plaintiff's post-plea account was that he actually was a passive victim of the officer's aggressive behavior and he did not recall resisting arrest. Id. at * 3. The district court further reasoned that "such proofs by 'logical necessity' negate the elements of the assault and resisting arrest charges he has previously admitted[,] Heck, and its progeny in this circuit, bar such a claim under § 1983." Id. (quoting Dyer v. Lee, 488 F.3d 876 (11th Cir.2007)).

On appeal the United States Court of Appeals for the Third Circuit reversed. It observed that Garrison had admitted to acting in an aggressive and threatening manner before he was arrested, which "constituted simple assault." Garrison v. Porch, 2010 WL 1511394, *4 (3d Cir. April 16, 2010). It further rejected the notion that Garrison's claim was barred by his failure to raise self-defense because his admission of assaulting the officer did not address whether any force used thereafter to effectuate the arrest was excessive. Id. In short, the court aligned itself with other courts of appeals that have recognized that "the mere fact [that] a conviction for assault or similar conviction aris[es] out of the same incident does not automatically preclude recovery on an excessive force claim brought under § 1983." Id. (collecting cases in support); see also Bush v. Strain, 513 F.3d 492, 498 (5th Cir. 2008) (a finding of excessive force does not necessarily implicate a plea of *nolo contendre* to resisting arrest and simple assault "if the factual basis for the conviction is temporally and conceptually distinct from the excessive force claim."); Hurt v. City of Atlantic City, 2010 WL 703193, * 5 (D.N.J. February 24, 2010) (Heck did not

---

[2] Pennsylvania's and New Jersey's definition of simple assault are identical. Compare Garrison, 2008 WL 1744730 at *17-18 with 18 Pa.C.S.A. § 2701. Likewise, Pennsylvania's and New Jersey's definitions of self defense are similar. Compare Garrison, 2008 WL 1744730 at *18 with 18 Pa.C.S. § 505(a).

11

bar excessive force claim because "Plaintiff [...] offered evidence that the defendant officers used excessive force after Plaintiff assaulted Officer Timek, after Plaintiff resisted arrest, and most importantly after Officer Timek and Officer Warner successfully subdued and handcuffed Plaintiff on the ground.").

Here, Domitrovich contends that excessive force was used after Hogue had sufficient control over him. He alleges he was not resisting or attempting to hit Hogue after he was brought to the rear door of the police car and at that point Hogue smacked his head off the car, punched him in the temple, and later pepper-sprayed him while he was in the back seat. The use of such force also continued after he was transported to the station, where he was pushed to the ground, had his head slammed of the counter and was punched. These events, if proved to be true, are certainly "temporally and conceptually distinct from" Domitrovich resisting arrest and assaulting Hogue by "striking him with a closed fist." It is quite possible that the jury might find excessive force was used on Domitrovich after he struck Hogue.

Hogue's reliance on the doctrines of collateral and judicial estoppel equally are unavailing. Under Pennsylvania law, "a conviction from a guilty plea is equivalent to a conviction from a trial-by-jury," and operates as "an admission to all facts alleged in the indictment." M.B. ex rel. T.B., 128 Fed. Appx. at 225-26. In other words, the [o]perative facts necessary for criminal convictions are admissible as conclusive facts in civil suits arising from the same events and circumstances." DiJoseph v. Vuotto, 968 F. Supp. 244, 247 (E.D. Pa. 1997) (citing Folino v. Young, 568 A.2d 171, 172 (Pa. 1990); Commonwealth v. Mitchell, 535 A.2d 581, 585 (Pa. 1987) ("criminal conviction[s] may be used to establish the operative facts in a subsequent civil case based on those same facts.")).

Here, the operative facts necessary for conviction of the crimes of resisting arrest and simple assault are those facts reflecting the conduct of Domitrovich that constituted the elements for each crime. Domitrovich admitted to striking Hogue with a closed fist prior to being arrested. This is all that was needed to from a proper factual basis for the plea and the assistant district attorney's reference to Hogue's conduct during the course of the encounter had no bearing on the operative facts necessary to establish Domitrovich's guilt. Consequently, the colloquy leading to

the entry of his plea does not estop Domitrovich from pursuing his excessive force claim.[3]

---

[3]Judicial estoppel is a concept similar to that of collateral estoppel but "is a matter of federal law, not state law." Lowrey v. Stovall, 92 F.3d 219, 223 n.3 (4th Cir. 1996). The Supreme Court has explained the doctrine as follows:

> [the] purpose [of the judicial estoppel doctrine] is "to protect the integrity of the judicial process," Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 (6th Cir. 1982), by "prohibiting parties from deliberately changing positions according to the exigencies of the moment," United States v. McCaskey, 9 F.3d 368, 378 (5th Cir. 1993). See In re Cassidy, 892 F.2d 637, 641 (7th Cir. 1990) ("Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process."); Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166 (4th Cir. 1982) (judicial estoppel "protect [s] the essential integrity of the judicial process"); Scarano v. Central R. Co., 203 F.2d 510, 513 (3d Cir. 1953) (judicial estoppel prevents parties from "playing 'fast and loose with the courts' " (quoting Stretch v. Watson, 6 N.J.Super. 456, 469, 69 A.2d 596, 603 (1949))). Because the rule is intended to prevent "improper use of judicial machinery," Konstantinidis v. Chen, 626 F.2d 933, 938 (D.C. Cir. 1980), judicial estoppel "is an equitable doctrine invoked by a court at its discretion," Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990) (internal quotation marks and citation omitted).
>
> Courts have observed that "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," Allen, 667 F.2d, at 1166; accord, Lowery v. Stovall, 92 F.3d 219, 223 (4th Cir. 1996); Patriot Cinemas, Inc. v. General Cinema Corp., 834 F.2d 208, 212 (1st Cir. 1987). Nevertheless, several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be "clearly inconsistent" with its earlier position. United States v. Hook, 195 F.3d 299, 306 (7th Cir. 1999); In re Coastal Plains, Inc., 179 F.3d 197, 206 (5th Cir. 1999); Hossaini v. Western Mo. Medical Center, 140 F.3d 1140, 1143 (8th Cir. 1998); Maharaj v. Bankamerica Corp., 128 F.3d 94, 98 (2d Cir. 1997). Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled," Edwards, 690 F.2d, at 599. Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," United States v. C.I.T. Constr. Inc., 944 F.2d 253, 259 (5th Cir. 1991), and thus poses little threat to judicial integrity. See Hook, 195 F.3d, at 306; Maharaj, 128 F.3d, at 98; Konstantinidis, 626 F.2d, at 939. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. See Davis, 156 U.S., at 689; Philadelphia, W., & B.R. Co. v. Howard, 13 How. 307, 335-337, 14 L.Ed. 157 (1851); Scarano, 203 F.2d, at 513 (judicial estoppel forbids use of

**Claim Against the Borough of Monaca**

Domitrovich claims that Monaca also is responsible for violating his civil rights. Specifically, it has permitted a practice to develop among its law enforcement officers that violates the due process rights of individuals arrested for driving under the influence. Monaca moves to dismiss this claim on the ground that the amended complaint fails to state a claim. Specifically, the amended complaint fails to allege facts that plausibly suggest an unconstitutional policy exists. In other words, the averments of the complaint fail to set forth a facially plausible claim under a viable legal theory of recovery. Consequently, Monaca asserts Domitrovich's due process claim must be dismissed.

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). Under the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is proper only where the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery. Id. at 544. In other words, the allegations of the complaint must be grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by presenting "a

---

"intentional self-contradiction ... as a means of obtaining unfair advantage"). . . . New Hampshire v. Maine, 532 U.S. 742, 749-51 (2001)(some citations omitted).

Here, Hogue's conduct as referenced in the plea colloquy did not supply operative facts essential to the factual basis for Domitrovich's plea. Domitrovich obtained his plea and conceded that he could mount no contest to the charges as they related to his own conduct: resisting arrest and simple assault by striking Hogue with a closed fist. He was not required to admit to any conduct by Hogue. Thus, Domitrovich's admissions in the plea were not inconsistent with his position on the use of excessive force. Domitrovich did not persuade the Court of Common Pleas to accept anything about Hogue's conduct. And as the discussion above makes clear, Domitrovich is not reaping an unfair advantage by proceeding on his excessive force claim. Consequently, the record will not support the use of judicial estoppel to bar Domitrovich's excessive force claim.

claim to relief that is plausible on its face." Ashcroft v. Iqbal, – U.S. –, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In contrast, pleading facts that only offer "'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor will advancing only factual allegations that are merely consistent with a defendant's liability. Id. Similarly, tendering only "naked assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient factual content to permit an inference that what has been presented is more than a mere possibility of misconduct. Id. at 1949-50; see also Twombly, 550 U.S. at 563 n. 8 (A complaint states a claim where its factual averments sufficiently raise a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim.") (quoting Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005) & Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 741 (1975)).

This is not to be understood as imposing a probability standard at the pleading stage. Iqbal, 129 S. Ct. at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."); Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (same). Instead, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element ... [and provides] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Phillips, 515 F.3d at 235; see also Wilkerson v. New Media Technology Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) ("The complaint must state 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'") (quoting Phillips, 515 F.3d at 235) (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.

Domitrovich alleges Monaca has a policy which allows its officers to present a chemical

testing refusal form at the preliminary hearing of DUI defendants in order to testify that the DUI arrestee refused to take a breathalyzer test. This policy is unconstitutional because it gives Monaca police officers the opportunity to testify falsely that the arrestee refused or failed the breathalyzer test when in fact the arrestee passed or was never administered such testing. Moreover, this practice permits Monaca's police officers to utilize the alcohol-testing refusal form as a means to file more serious charges against an arrestee, even though the officer knows the charges not to be true.

Whether a municipal government may be held liable under § 1983 is governed by the doctrine announced in Monell v. New York City Department of Social Services, 436 U.S. 658, 694 (1978). There, the Supreme Court held that liability against such an entity may not be established by the respondeat superior doctrine, but instead must be founded upon evidence indicating the government itself supported a violation of the plaintiff's constitutional rights. Id.; see also Bielevicz v. Dubinon, 915 F.3d 845, 849-50 (3d Cir. 1990) (stating "municipal liability attaches only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" (quoting Monell, 436 U.S. at 694). Furthermore, § 1983 does not itself create substantive rights, but instead provides a vehicle for vindicating a violation of a federal right. Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). A cause of action under 42 U.S.C. § 1983 has two elements: a plaintiff must prove (1) a violation of a right, privilege or immunity secured by the constitution and laws of the United States (2) that was committed by a person acting under color of state law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996); Kelly v. Borough of Sayreville, 107 F.3d 1073, 1077 (3d Cir. 1997).

Domitrovich's Monell claim in effect seeks to establish that his convictions for resisting arrest and simple assault were obtained in violation of his due process rights. This claim is without legal merit on several levels.

First, Domitrovich's failure to proffer competent evidence to support a finding that Hogue violated his constitutional rights in conjunction with the entry of his plea to the two charges forecloses his ability to establish municipal liability against Monaca. See Brown, 318

F.3d at 482 (although a municipality can be found liable under § 1983 even when no individual officer violated plaintiff's constitutional rights, "there still must be a violation of the plaintiff's constitutional rights."). It is alleged that Hogue brought an alcohol testing refusal form into Domitrovich's preliminary DUI hearing and the threat of introducing this form and testifying that Domitrovich refused to engage in such testing caused Domitrovich to plead no contest to the more serious charges of simple assault and resisting arrest. In other words, Domitrovich's plea was the product of coercion and not made of his own free will.

Of course, a civil rights case is not a proper vehicle for a collateral attack on the validity of a conviction and in order to recover damages for an allegedly unconstitutional conviction or other harm caused by actions whose unlawfulness would render a conviction invalid, one must prove the conviction has been reversed, expunged or called into question through the issuance of a writ of habeas corpus. Heck, 512 U.S. at 486-87. This conclusion rests "upon 'the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments' [and the fact that] 'Congress[]' . . . 'has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983.' " Wallace, 549 U.S. at 392.

Domitrovich has not pled that is convictions have been reversed, expunged or declared unconstitutional by the issuance of the great writ. Consequently, his attempt to impeach their validity by showing in a civil rights case that they were obtained in violation of due process cannot be countenanced.

Second, the contention that Hogue's use of an alcohol-testing refusal form at the preliminary DUI hearing in the manner described constitutes an unconstitutional policy or practice is nonsensical. Under section 1547(e) of the Pennsylvania Motor Vehicle Code, in a prosecution for driving under the influence of alcohol, the Commonwealth may introduce evidence of an arrestee's refusal to submit to a chemical test of his breath or blood. See 75 Pa. C.S. § 1547(e). A type of evidence the Commonwealth may offer to establish the arrestee's refusal is the arresting officer's testimony that the arrestee refused a breathalyzer or other form of

chemical testing. See Rukavina v. Cmwlth.,425 A.2d 472, (Pa. Commw. 1981) (officer may testify as to manner and behavior of a defendant in support of charge that arrestee refused breathalyzer test). To the extent that the arrestee contests the arresting officer's testimony and submission of a refusal form, he may submit his own contrary evidence, including his own testimony, to defeat the Commonwealth's ability to meet its burden of proof. In that event, the fact finder must evaluate the evidence, including any such testimony, determine issues of credibility, and determine whether the Commonwealth has met its burden. See Herbert v. Cmwlth.,460 A.2d 920, 922-23 (Pa. Commw. 1983) (where there was conflicting testimony between an arrestee and an arresting officer about whether the arrestee refused a breathalyzer, the determination was left for the fact finder).

Under Pennsylvania law as it is established, Hogue, the arresting officer, is permitted to testify at a DUI hearing, which can include submitting an alcohol refusal form into evidence and testifying about the circumstances leading to any asserted refusal. Domitrovich had notice that he was being charged with DUI, which carried with it notice that the Commonwealth may seek to introduce "the fact that the defendant refused to submit to chemical testing . . . along with other testimony concerning the circumstances of the refusal." 75 Pa. C. S. § 1547(e). If Domitrovich had reason to contest Hogue's testimony or use of the form, he had every right and an opportunity to challenge the Commonwealth's evidence through his own testimony or other evidence, at which time the fact-finder could determine credibility issues. Domitrovich chose not to do so and instead elected to reap the benefit of a favorable plea offer to reduce six charges to one original charge and one reduced charge. He also had every right and opportunity to challenge any charging decision that was made in conjunction with the incident that brought him before the court. He chose not to do so. In other words, he elected to forego the process afford him by the state and get the benefit of having four of the six charges against him dropped.

"[A] state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by a local administrative body." DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 597 (3d Cir.1995), overruled on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392 (3d Cir.2003). In other words, when a

18

state "affords a full judicial mechanism with which to challenge the [] decision" in question, the state provides adequate procedural due process, whether or not the plaintiff avails him or herself of the provided appeal mechanism. Id. (quoting Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 682 (3d Cir.1991)).

Here, Domitrovich had notice by operation of law that a the Commonwealth could appear and introduce evidence of a refusal to submit to testing. He had an opportunity to challenge the Commonwealth's charging decisions and the use of any evidence introduced for such purposes. He cannot elect to forego the state process which had the ability to eliminate any unfair advantage enuring to the Commonwealth that he perceives and then claim his due process rights have been violated. All the process that is due has been received under such circumstances. See Marshall v. Lauriault, 372 F.3d 175, 186 (3d Cir. 2004) (observing that "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner' " and concluding that where a party had adequate notice under the circumstances and the ability to pursue its claim in state court system and receive redress, the party has been afforded "all the process that is due."); DeBlasio 53 F.3d at 597 (same).

Finally, Domitrovich's claim against Monaca is leveled against the wrong party. Domitrovich conveniently overlooks the fact that the prosecutorial authority is vested in the Commonwealth in the first instance and then in the county district attorney's offices. It is the assistant district attorney who exercises front-line control over whether any particular evidence can and should be used in any particular prosecution. Of course, these entities enjoy immunity as to Domitrovich's due process claim. And he has offered no persuasive fact or reason why some other "person" within the meaning of § 1983 should be recognized as controlling or sharing in that prosecutorial responsibility. It follows that Domitrovich's due process claim against Monaca must be dismissed.

For the reasons set forth above, defendant Hogue's motion for summary judgement will be granted in part and denied in part and defendant Borough of Monaca's motion to dismiss will

be granted. Appropriate orders will follow.

Date: September 1, 2010

                                                s/David Stewart Cercone
                                                David Stewart Cercone
                                                United States District Judge

cc:     Gianni Floro, Esquire
        Suite 6
        935 Beaver Grade Road
        Moon Township, PA 15108

        Robert J. Grimm, Esquire
        Swartz Campbell LLC
        Suite 4750, U.S. Steel Tower
        600 Grant Street
        Pittsburgh, PA 15219